Filed 2/24/15  Young v. Debtwave Credit Counseling CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CHRIS YOUNG et al., | |
| Plaintiffs and Appellants, | G049508 |
| v. | (Super. Ct. No. 30-2011-00479121) |
| DEBTWAVE CREDIT COUNSELING, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Geoffrey T. Glass, Judge.  Affirmed.

Law Offices of Scott E. Schutzman and Scott E. Schutzman for Plaintiffs and Appellants.

Dinsmore & Sandelmann, Frank Sandelmann and Kirsten Stockton for Defendant and Respondent.

\*          \*          \*

INTRODUCTION

Chris Young and Freedom Consulting Group, LLC (Freedom), sued Debtwave Credit Counseling, Inc. (Debtwave), for quantum meruit. Debtwave filed a motion for summary judgment, arguing it was undisputed that Debtwave had not requested Young and Freedom to provide any services to it. The trial court granted the motion; we affirm. Young and Freedom failed to raise a triable issue of material fact countering Debtwave's evidence that it did not request them to provide it with any services.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Johnson Law Group (Johnson) provided debt settlement and debt management services to consumers. Debtwave provided back-office processing assistance to Johnson. In October 2008, Young contacted Debtwave asking if he could refer business to it. Debtwave referred Young to Johnson. Young entered into a marketing agreement with Johnson, under the terms of which Young would provide promotional and marketing services to Johnson and develop qualified leads for Johnson. Johnson agreed to pay Young $1,400 for each qualified lead.

Young later formed Freedom, which entered into a separate marketing agreement with Johnson. Freedom provided the same services to Johnson, and received the same compensation from Johnson, as had Young. Debtwave was not a party to either Young's or Freedom's marketing agreements with Johnson.

In April 2011, Young and Freedom stopped receiving any payments from Johnson; apparently, Johnson ceased performing debt settlement and management services when its sole partner was suspended from the practice of law. Debtwave contacted Johnson's clients to offer its own debt management services; Johnson's former clients retained Debtwave.

2

Young and Freedom sued Johnson for breach of written contract. Young and Freedom later amended the complaint to add a claim for quantum meruit against Debtwave. Debtwave filed a motion for summary judgment, which the trial court granted. Judgment was entered in favor of Debtwave; Young and Freedom filed a timely notice of appeal.

DISCUSSION

We review the trial court's decision de novo, and we consider all the evidence set forth in the moving and opposing papers, except that to which an objection was made and sustained. (*Lonicki v. Sutter Health Central* (2008) 43 Cal.4th 201, 206.) A motion for summary judgment is properly granted if the moving papers establish there is no triable issue of material fact, and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "To prevail on the motion, a defendant must demonstrate the plaintiff's cause of action has no merit. This requirement can be satisfied by showing either one or more elements of the cause of action cannot be established or that a complete defense exists. [Citations.] If the defendant meets this requirement, the burden shifts to the plaintiff to demonstrate a triable issue of material fact exists. [Citations.]" (*We Do Graphics, Inc. v. Mercury Casualty Co.* (2004) 124 Cal.App.4th 131, 135-136.)

In order to recover for quantum meruit, Young and Freedom were required to establish (1) the services were requested by Debtwave, (2) the services were provided by Young and Freedom, (3) Young and Freedom did not provide the services gratuitously, and (4) there was a mutual expectation that Debtwave would compensate Young and Freedom for providing the services. (*Strong v. Beydoun* (2008) 166 Cal.App.4th 1398, 1404; *Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 794; CACI No. 371.)

3

Debtwave offered admissible evidence that it did not request Young or Freedom to, nor did Young or Freedom, deliver any goods to Debtwave, refer any leads to Debtwave, or provide any services to Debtwave. This evidence successfully shifted the burden to Young and Freedom to produce admissible evidence establishing the existence of a triable issue of material fact.

Young and Freedom offered the following admissible evidence in opposition to the motion for summary judgment:

(1) Young contacted Debtwave to find out if he could refer business to Debtwave. Debtwave's director of operations provided Young with information on how to refer leads to *Johnson*. Young "understood that although I was initially contracting with the Johnson Law Group, Debtwave was facilitating the arrangement and would be paid in some way on the leads that I will provide to the Johnson Law Group."

(2) Young and Freedom were owed $177,727 for 310 qualified leads provided to Johnson when Johnson stopped making payments to Young and Freedom in April 2011.

(3) Debtwave did not pay Freedom any service fees for clients referred to Johnson because Debtwave did not have an agreement with Freedom.

(4) A document attached to the declaration of Young and Freedom's trial counsel, which he declared was "a true and correct copy of a commission summary produced by Debtwave, namely Documents DW2000470-DW2000526, which purport to be a commission summary listing commissions paid to Chris Young based upon the verified leads which he provided to Johnson Law Group."

(5) A copy of the marketing agreement between Johnson and Freedom, which does not contain any mention of or reference to Debtwave.

(6) Debtwave began providing debt management and settlement services to Johnson's clients, including those clients Young and Freedom referred to Johnson, and began collecting fees from Young and Freedom's former clients.

4

None of this evidence was sufficient to create a triable issue of material fact as to whether Debtwave requested that Young or Freedom provide any services to it. Debtwave was not obligated to assume Johnson's contract with Young or Freedom when it took over the servicing of Johnson's clients. Debtwave did not request, directly or impliedly, that Young and Freedom provide it with qualified leads, and there was no mutual expectation between Debtwave and Young and Freedom that Debtwave would compensate Young and Freedom for leads provided to Johnson.

At most, the evidence showed Young and Freedom provided services which afforded a benefit to Debtwave, those services were not provided gratuitously, and Young and Freedom expected to be compensated for those services. The elements missing from the evidence are that Debtwave requested Young and Freedom to provide the services, and that Debtwave expected to continue to compensate Young and Freedom once it took over the business from Johnson. Indeed, Debtwave's referral of Young directly to Johnson when Young asked Debtwave if he could refer business to Debtwave contradicts any claim that Debtwave requested the services be provided. And there is no evidence in the record supporting an inference that Debtwave was aware, at the time Young first contracted with Johnson, that Johnson's sole partner would lose his law license, and Debtwave would be in a position to take over the business; Debtwave could not have had any expectation that it would compensate Young and Freedom. There is simply no objective evidence of the satisfaction of all the requirements for recovery under quantum meruit.

*Earhart v. William Low Co.* (1979) 25 Cal.3d 503, on which Young and Freedom rely, does not change our analysis or conclusion. In *Earhart*, our Supreme Court held that "a party who expends funds and performs services at the request of another, under the reasonable belief that the requesting party will compensate him for such services, may recover in quantum meruit although the expenditures and services do not directly benefit property owned by the requesting party." (*Id.* at p. 505.) That case,

5

however, was vastly different factually. The defendant requested that the plaintiff perform construction work on the defendant's property and on an adjacent parcel of property. (*Id.* at pp. 506-507.) The defendant then refused to pay the plaintiff for any of the work performed. (*Id.* at p. 507.) The trial court found that the defendant owed the plaintiff in quantum meruit for the work performed on the defendant's property, but not on the adjoining property because the work on the adjoining property did not benefit the defendant directly. (*Id.* at pp. 507-508.) The Supreme Court, however, reversed that portion of the trial court's ruling. (*Id.* at p. 516.)

Under the rule of *Earhart v. William Low Co.*, Debtwave might be liable in quantum meruit to pay Young and Freedom for work they performed at Debtwave's request but for which Debtwave did not directly benefit. However, the undisputed evidence in the appellate record establishes that Debtwave did not request Young and Freedom to perform any work or services for it or for any third party.

DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.

6